KAREN P. HEWITT
United States Attorney
REBECCA S. KANTER
Assistant U.S. Attorney
California State Bar No. 230257
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Phone: (619) 557-6747
Fax: (619) 235-4716
E-mail: rebecca.kanter@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAUL TORRES-GARCIA,<br>(a.k.a. ALBERTO JOSE DEL MURO-GUERRERO),<br><br>Defendant. | Criminal Case No. 08cr0139-BEN<br><br>**RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS:**<br><br>**(1) TO COMPEL DISCOVERY**<br>**(2) TO FILE FURTHER MOTIONS**<br><br>Date: April 24, 2008<br>Time: 9:00 a.m.<br>Court: The Hon. Roger T. Benitez |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, United States Attorney, Karen P. Hewitt, and Assistant U.S. Attorney Rebecca S. Kanter, and hereby files its Response and Opposition to Defendant's Motions to Compel Discovery and File Further Motions. This Response and Opposition is based upon the files and records of this case, together with the attached Statement of Facts, Memorandum of Points and Authorities, as well as the Government's Motion for Reciprocal Discovery.

/ /

//

//

I

**STATEMENT OF FACTS**

**A. Apprehension**

On January 7, 2008, at approximately 6:13 a.m., Raul Torres-Garcia ("Defendant") drove a 1982 white Chevrolet truck to the Calexico East Port of Entry. Defendant applied for entry into the United States and presented Customs and Border Protection Officer E. Bosquet with a California birth certificate and an identification card bearing the name Alberto Jose Del Muro Guerrero. Defendant stated that he was going to Calexico, California to go shopping. Officer Bosquet questioned whether Defendant was being truthful about his citizenship and referred him to secondary inspection.

In the vehicle secondary lot, CBP Officer S. Baca observed a non-factory compartment near the gas tank. Canine Enforcement Officer B. Pyburn screened the vehicle utilizing his narcotics detection dog Slate. Slate alerted to the flatbed area of the truck. Officers cut into the flatbed of the truck and found 12 packages in a non-factory compartment in the flatbed. The total weight of the packages was 108.08 kilograms (237.78 pounds.)

At 8:00 a.m., Immigration and Customs Enforcement Agent Hugo Leon advised Defendant that he was under arrest. Defendant was advised of his constitutional rights at 10:10 a.m. Defendant waived his rights and agreed to speak to agents without an attorney present. Defendant claimed to be a United States Citizen born in California. He denied knowledge of the marijuana concealed in the truck. He stated that he was going to the Santo Tomas Swap Meet in Calexico to purchase a washer and dryer. He said he is unemployed and that he purchases items such as washers and dryers at the swap meet and resells them to make money.

Defendant stated that he purchased the truck five to six weeks previously for $1,500 in San Luis, Rio Colorado, Mexico from an unknown individual he met at a park. He said he had the $1,500 cash with him to buy the truck. Defendant claimed that he had possession of his truck since he purchased it, except for when he loaned the truck to "Angel Sanchez" eight days earlier. Defendant said he loaned his truck to Sanchez to move some items. Defendant said he was arrested many years before for drunk driving in Madera, California; he denied any other arrests. Defendant had $849 in his possession.

Defendant was transported to the Imperial County Jail. While being transported to jail,

Defendant told Agent Leon that if Agent Leon would return the money that was seized from him, he would provide Agent Leon with names and addresses. Defendant stated that everything he had said was a lie and that the agents had nothing for their investigation.

**B. Criminal History**

Defendant has numerous prior arrests and convictions under various aliases. Defendant has multiple convictions for Illegal Entry beginning on September, 15, 1979, when he received a sentence of 120 days jail. On September 15, 1986, he was convicted of Illegal Entry and received a four month custodial sentence. Defendant also has numerous convictions for False Claim to U.S. Citizenship, including a conviction on June 1, 1984 for which he received a term of imprisonment of two years. Defendant's history in the Southern District of California since 1990 is extensive and includes the following cases:

- 91CR0898-N: 18 U.S.C. §911 – False Claim to U.S. Citizenship – 21 months
- 94CR0296-B: 18 U.S.C. §911 – False Claim to U.S. Citizenship – 30 months
- 98CR2287-K: 8 U.S.C. § 1326 – Deported Alien Found in the U.S. – 33 months; 18 U.S.C. §911 – False Claim to U.S. Citizenship – 33 months (concurrent)
- 01CR0210-W: 8 U.S.C. § 1326 – Deported Alien Found in the U.S. – 37 months; 18 U.S.C. §911 – False Claim to U.S. Citizenship – 36 months (concurrent)
- 05CR1714-JM: 18 U.S.C. §911 – False Claim to U.S. Citizenship – dismissed; 18 U.S.C. §1028A(a)(1) – Aggravated Identity Theft – dismissed

**C. Immigration History**

Defendant has numerous prior removals and exclusions. On March 19, 1998, and again on August 22, 2005, Defendant was ordered deported to Mexico after a hearing in front of an Immigration Judge. Defendant has also been deported on the following occasions: October 23, 1997, December 2, 2000, October 21, 2004, February 26, 2007, and November 17, 2007.

**D. Other Events – Social Security Benefits Activities**

On July 17, 2008, Defendant went to the El Centro Social Security office to report a change of address for the Social Security Insurance benefits for Alberto Jose Del Muro. Defendant requested that the benefit checks be sent to a post-office box in Calexico, California. Defendant returned to the office

on July 18, 2007, August 24, 007 and October 15, 2007, attempting to effectuate the change of address for the Social Security benefits. Defendant provided various documents to establish his identity as Alberto Jose Del Muro, including the same birth certificate and identification card he presented at the Port of Entry on January 7, 2008.

The post-office box number provided by Defendant is rented to the Apostolic Assembly Church in Calexico, California. The church pastor indicated that the person he knows as Alberto Jose Del Muro is homeless and uses the church's post-office box to receive mail.

On February 20, 2008, the real Alberto Jose Del Muro Guerrero was contacted at his home in Chowchilla, California. He verified the details of his identity. He stated that he is aware of the imposter using his identity and has testified against Defendant 4-5 times in the past in San Diego, California.

**II**

**DEFENDANT'S MOTIONS TO COMPEL DISCOVERY**

The Government has provided to Defendant approximately 228 pages of discovery, which includes the reports from the Customs and Border Protection Officers, Immigration and Customs Enforcement Agent, Social Security office, summaries of the statements made by Defendant, an inventory of Defendant's property, copies of the documents found in his possession and in the vehicle, and photographs of the vehicle and the narcotics. The Government has also produced a videotape of the Defendant's post-arrest statement.

**(1) Defendant's Statements**

The Government recognizes its obligation, under Rules 16(a)(1)(A) and 16(a)(1)(B), to provide to Defendant the substance of Defendant's oral statements and written statements. (Unless otherwise noted, all references to "Rules" refers to the Federal Rules of Criminal Procedure.) The Government will produce all of the Defendant's statements that are known to the undersigned Assistant U.S. Attorney at this date. If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be promptly provided.

**(2) Defendant's Prior Record**

The Government has provided Defendant with a criminal rap sheet as well as information, including case numbers, of Defendant's prior cases in the Southern District of California. The

Government thereby has and will continue to fulfill its duty of discovery under Rule 16(a)(1)(D).[1] See United States v. Audelo-Sanchez, 923 F.2d 129 (9th Cir. 1990). To the extent that the Government determines that there are any additional documents reflecting Defendant's prior criminal record, the Government will provide those to Defendant.

The Government will disclose in advance of trial the general nature of any "other bad acts" evidence that the United States intends to introduce at trial pursuant to Fed. R. Evid. 404(b). Evidence should not be treated as "other bad acts" evidence under Fed. R. Evid. 404(b) when the evidence concerning the other bad acts and the evidence concerning the crime charged are "inextricably intertwined." United States v. Soliman, 812 F.2d 277, 279 (9th Cir. 1987).

**(3) Documents and Tangible Objects**

The Government has complied and will continue to comply with Rule 16(a)(1)(E)[2] in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy documents and tangible objects that are within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant. The Government need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**(4) Brady and Giglio Material**

The Government will perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) to disclose material exculpatory information or evidence favorable to Defendant when such evidence is material to guilt or punishment. The Government recognizes that its obligation under Brady covers not only exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on behalf of the United States. See Giglio v. United States, 405 U.S. 150, 154 (1972); United States v. Bagley,

---

[1] Defendant requests evidence of his prior record pursuant to Rule 16(a)(1)(B). Rule 16(a)(1)(B) relates to prior written or recorded statements. The Government interprets this as a request pursuant to Rule 16(a)(1)(D), which is the section of the discovery rule pertaining to a defendant's prior record.

[2] Defendant makes this request under Fed. R. Crim. P. 16(a)(1)(c). Rule 16(a)(1)(C) relates to organizational defendants. Therefore, the Government interprets this as a request under Rule 16(a)(1)(E), which applies to the discovery of documents and objects.

473 U.S. 667, 676-77 (1985). This obligation also extends to evidence that was not requested by the defense. Bagley, 473 U.S. at 682; United States v. Agurs, 427 U.S. 97, 107-10 (1976). "Evidence is material, and must be disclosed (pursuant to Brady), 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Carriger v. Stewart, 132 F.3d 463, 479 (9th Cir. 1997) (en banc). The final determination of materiality is based on the "suppressed evidence considered collectively, not item by item." Kyles v. Whitley, 514 U.S. 419, 436-37 (1995).

Brady does not, however, mandate that the Government open all of its files for discovery. See United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000) (per curiam). Under Brady, the United States is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (see United States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from other sources (see United States v. Bracy, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that the defendant already possesses (see United States v. Mikaelian, 168 F.3d 380-389-90 (9th Cir. 1999) amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S. Attorney could not reasonably be imputed to have knowledge or control over. See United States v. Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001). Brady does not require the Government "to create exculpatory evidence that does not exist," United States v. Sukumolahan, 610 F.2d 685, 687 (9th Cir. 1980), but only requires that it "supply a defendant with exculpatory information of which it is aware." United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976).

An agreement that the Government makes with a witness for testimony in exchange for money or in exchange for favorable treatment in the criminal justice system is generally subject to disclosure as impeachment evidence under Brady and Giglio. See United States v. Kojayan, 8 F.3d 1315, 1322-23 (9th Cir. 1993); Benn v. Lambert, 238 F.3d 1040, 1054-60 (9th Cir. 2002). The Government is not aware of any Giglio information related to this case. If the Government discovers the existence of Giglio information, the information will be provided to the Defendant.

**(5) Report of Scientific Tests or Examinations and Expert Reports**

At this time, the only scientific test that the Government is aware of is an analysis of the marijuana by the DEA laboratory. The Government has not yet received the results of that analysis, but

will provide Defendant with the results of any scientific tests or examinations in accordance with Rule 16(a)(1)(F) when those tests results are received. In addition, if other experts will testify at trial, the United States will comply with its obligation under Rule 16(a)(1)(G) to provide a written summary of such testimony in advance of trial.

**(6) Request for Preservation of Evidence**

The Constitution requires the Government to preserve evidence "that might be expected to play a significant role in the suspect's defense." California v. Trombetta, 467 U.S. 479, 488 (1984). To require preservation by the Government, such evidence must (1) "possess an exculpatory value that was apparent before the evidence was destroyed," and (2) "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 489; see also Cooper v. Calderon, 255 F.3d 1104, 1113-14 (9th Cir. 2001).

The Government has made every effort to preserve evidence it deems to be relevant and material to this case, including sending a letter to the agency in charge on April 15, 2008, requesting the specific preservation of evidence. Any failure to gather and preserve evidence, however, would not violate due process absent bad faith by the Government that results in actual prejudice to the Defendant. See Illinois v. Fisher, 540 U.S.1174, 124 S.Ct. 1200 (2004) (per curiam); Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988); United States v. Rivera-Relle, 322 F.3d 670 (9th Cir. 2003); Downs v. Hoyt, 232 F.3d 1031, 1037-38 (9th Cir. 2000).

The Government has no objection to the preservation of the agents' handwritten notes, if there are any. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the Government objects to providing Defendant with a copy of the rough notes at this time. The Government is not required to produce the notes pursuant to the Jencks Act because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The notes are not Brady material because, as discussed further, the notes do not present any material exculpatory information or any evidence favorable to Defendant that is material to guilt or punishment. If, during a future

evidentiary hearing, certain rough notes become particularly relevant, the notes in question will be made available to Defendant.

**III**

**DEFENDANT'S MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS**

The Government does not object to the granting of leave to file further motions as long as the further motions are based on newly discovered evidence or discovery provided by the Government subsequent to the instant motion at issue.

**IV**

**GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY**

**A. All Evidence That Defendant Intends To Introduce In His Case-In-Chief**

Since the Government will honor Defendant's request for disclosure under Rule 16(a)(1)(E), the Government is entitled to reciprocal discovery under Rule 16(b)(1). Pursuant to Rule 16(b)(1), the Government requests that Defendant permit the Government to inspect, copy and photograph any and all books, papers, documents, photographs, tangible objects, or make copies or portions thereof, which are within the possession, custody, or control of Defendant and which Defendant intends to introduce as evidence in his case-in-chief at trial.

The Government further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession and control of Defendant, which he intends to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendant intends to call as a witness. The Government also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the Government receives the reciprocal discovery to which it is entitled.

**B. Reciprocal Jencks – Statements By Defense Witnesses (Other Than Defendant)**

Rule 26.2 provides for the reciprocal production of Jencks material. Rule 26.2 requires production of the prior statements of all witnesses, except a statement made by Defendant. The time frame established by Rule 26.2 requires the statements to be provided to the Government after the witness has testified. However, to expedite trial proceedings, the Government hereby requests that

Defendant be ordered to provide all prior statements of defense witnesses by a reasonable date before trial to be set by the Court. Such an order should include any form in which these statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and reports.

**V**

**CONCLUSION**

For the foregoing reasons, the Government requests that the Court deny Defendant's motions, except where unopposed, and grant the Government's motion for reciprocal discovery.

DATED: April 17, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/***Rebecca Kanter***
REBECCA S. KANTER
Assistant United States Attorney
Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAUL TORRES-GARCIA,<br>(a.k.a. ALBERTO JOSE DEL MURO-GUERRERO),<br><br>Defendant. | ) | Criminal Case No. 08cr0139-BEN<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, REBECCA S. KANTER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSITION** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Michael Messina

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 17, 2008.

/s/ ***Rebecca Kanter***
REBECCA S. KANTER