KNUT S. JOHNSON (CSB 125725)
LAW OFFICE OF KNUT S. JOHNSON
1010 Second Avenue, Suite 1850
San Diego, California 92101
(619) 232-7080 (Phone)
(619) 232-7324 (Fax)
knut@knutjohnson.com

Attorney for RAUL TORRES-GARCIA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>           Plaintiff,<br><br>      vs.<br><br>RAUL TORRES-GARCIA,<br><br>Aka Alberto Jose del Muro-Guerrero<br><br>           Defendant. | CASE NO. 08 cr 0139-BEN<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS:**<br>**(1) FOR DISCOVERY;**<br>**(2) TO SEVER COUNTS;**<br>**(3) TO SUPPRESS STATEMENTS;**<br>**(4) TO FILE FURTHER MOTIONS.**<br><br>**Time: 2:00 p.m.**<br>**Date: September 22, 2008** |

## I.

## **FACTS**

These facts are based only on the Complaint in this case, and are recited only for the purpose of these motions. The statements contained herein are not admissions, and in many cases the defendant disputes these facts.

The government has filed a superseding indictment charging the defendant with 4 counts:

1. Importation of Marijuana (21 USC § 952 and 960) (Count 1)
2. Possession of Marijuana With Intent to Distribute (21 USC § 841(a)(1)) (Count 2)
3. Attempted Entry After Deportation (8 USC § 1326(a) and (b)) (Count 3)
4. Aggravated Identity Theft (18 USC § 1028A(a)(1)) (Counts 4)

- 1 -

- 08 cr 0139-BEN

1    According to the discovery, on January 7, 2008 the defendant entered the
2 United States at Calexico while driving a 1982 truck. Agents discovered 108
3 kilograms of marijuana in the truck, and the agents then interviewed the
4 defendant, who identified himself as Alberto Jose Del Muro-Guerrero.
5    The discovery also contains certain documents related to Alberto Jose del
6 Muro. According to some of that discovery, a letter dated February 29, 2008
7 from the Office of the Inspector General, Office of Investigations, Social Security
8 Administration, the defendant in this case is not Alberto Del Muro but is instead
9 Raul Torres Garcia. According to that letter, the defendant applied for public
10 assistance benefits under the false name.
11    The discovery contains no reports related to any prior deportations.

## II.

## **THE DEFENDANT IS ENTITLED TO DISCOVERY**

14    This motion is not limited to those items that the prosecutor knows of, but
15 rather includes all discovery that is in the custody, control, care, or knowledge
16 of any "closely related investigative [or other] agencies", under <u>United States v.</u>
17 <u>Bryan,</u> 868 F.2d 1032, 1036 (9th Cir. 1989). Counsel for The defendant believes
18 that numerous agencies have been involved in the investigation of this case.
19 The defendant therefore moves for discovery of the following:
20    (1)    **The defendant's Statements**. Under Fed. R. Crim. P. 16 (a)(1)(A)
21 the defendant is entitled to disclosure of: all copies of any written or recorded
22 statements made by the defendant; the substance of any statements made by the
23 defendant that the government intends to offer in evidence at trial; any recorded
24 testimony of the defendant before the grand jury; any response by the defendant
25 to interrogation; the substance of any oral statements that the government
26 intends to introduce at trial; any written summaries of the defendant's oral
27 statements contained in the handwritten notes of the government agent; any
28 response to any Miranda warnings that were given to the defendant (See <u>United</u>

1  States v. McElroy, 697 F.2d 459 (2d Cir. 1982)); and any other statements by the
2  defendant that are discoverable under Fed. R. Crim. P.16(a)(1)(A).  The
3  Advisory Committee Notes as well as the 1991 amendments to Rule 16 make it
4  clear that the Government must reveal all the defendant's statements, whether
5  oral or written, regardless of whether the Government intends to introduce
6  those statements at trial;

7      (2)    **Reports of Scientific Tests or Examinations.**  Pursuant to Fed. R.
8  Crim. P.16(a)(1)(D), The defendant requests the reports of all tests and
9  examinations conducted upon any evidence in this case.  This request includes
10 any financial or other data that has been examined, or tabulated, or otherwise
11 tested;

12     (3)    **Brady Material.**  The defendant requests all documents, statements,
13 agents' reports, and tangible evidence favorable to the defendant on the issue of
14 guilt and/or which affects the credibility of the government's case.  Brady v.
15 Maryland, 373 U.S. § 83 (1963).  Impeachment as well as exculpatory evidence
16 falls within Brady's definition of evidence favorable to the accused.  United
17 States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976).

18     (4)    **Any Information that May Result in a Lower Sentence under the**
19 **United States Sentencing Guidelines (U.S.S.G.).**  As discussed above, this
20 information is discoverable under Brady v. Maryland, 373 U.S. 83 (1963).  This
21 request includes any information that could affect any base offense level or
22 specific offense characteristic under Chapter Two of the U.S.S.G.  Also included
23 in this request is any information relevant to a Chapter Three adjustment, a
24 determination of the defendant's criminal history, or any other application of the
25 U.S.S.G.;

26     (5)    **The Defendant's Prior Record.**  Evidence of prior record is
27 available under Fed. R. Crim. P.16(a)(1)(B);
28

- 3 -

-    08 cr 0139-BEN

(6) **Any Proposed 404(b) Evidence.** Evidence of prior similar acts is discoverable under Fed. R. Crim. P.16(a)(1)(C) and Fed. R. Evid. 404(b) and 609. In addition, under Fed. R. Evid. 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. The defendant requests that such notice be given eight weeks before trial in order to give the defense time to adequately investigate and prepare for trial;

(7) **Evidence Seized.** Evidence seized as a result of any search, either warrantless or with a warrant, is discoverable under Fed. R. Crim. P.16(a)(1)(C);

(8) **Request for Preservation of Evidence.** The defendant specifically requests again that any physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and which relates to the prosecution in this case be preserved. This request includes, but is not limited to, any "dispatch" or other tapes, samples used to run any scientific tests, and any evidence seized from any third party. It is requested that the government be ordered to question all the agencies and individuals involved in the prosecution and investigation of this case to determine if such evidence exists, including disputed tapes, and if it does exist, to inform those parties to preserve any such evidence;

(9) **Tangible Objects.** The defendant requests, under Fed. R. Crim. P. 16(a)(2)(C), the opportunity to inspect and copy as well as test, if necessary, all other documents and tangible objects, including photographs, books, papers, documents, photographs, of building or places or copies of portions thereof that are material to the defense or intended for use in the government's case-in-chief, or were obtained from or belong to the defendant. Also included in this request is the defendants A-File;

(10) **Evidence of Bias or Motive to Lie.** The defendant requests any evidence that any prospective government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or her testimony. Pennsylvania v. Ritchie, 480 U.S. 39 (1987); United States v. Strifler, 851 F.2d 1197 (9th Cir. 1988). Such evidence can include prior statements, business dealings, or actions;

(11) **Impeachment Evidence.** The defendant requests any evidence that any prospective government witness has engaged in any criminal act, whether or not resulting in a conviction, and whether any witness has made a statement favorable to the defendant. See Fed. R. Evid. 608, 609 and 613. Such evidence is discoverable under Brady v. Maryland, supra. See, United States v. Strifler, 851 F.2d 1197 (9th Cir. 1988) (witness' prior record); Thomas v. United States, 343 F.2d 49 (9th Cir. 1965) (evidence that detracts from a witness' credibility);

(12) **Evidence of Criminal Investigation of Any Government Witness.** The defendant requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct. United States v. Chitty, 760 F.2d 425 (2d Cir.) cert. denied, 474 U.S. 945 (1985);

(13) **Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling.** The defendant requests any evidence, including any medical or psychiatric report or evaluation, tending to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired. The defendant also requests any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic. United States v. Strifler, 851 F.2d 1197 (9th Cir. 1988); Chavis v. North Carolina, 637 F.2d 213, 224 (4th Cir. 1980);

(14) **Witness Addresses.** The defendant requests the name and last known address of each prospective government witness. See United States v. Napue, 834 F.2d 1311 (7th Cir. 1987); United States v. Tucker, 716 F.2d 576 (9th

1  Cir. 1983) (failure to interview government witnesses by counsel is ineffective);
2  United States v. Cook, 608 F.2d 1175,1181 (9th Cir. 1979) (defense has equal right
3  to talk to witnesses).  The defendant also requests the name and last known
4  address of every witness to the crime or crimes charged (or any of the overt acts
5  committed in furtherance thereof) who will not be called as a government
6  witness.  United States v. Cadet, 727 F.2d 1453 (9th Cir. 1984);

7  (15)  **Name of Witnesses Favorable to the Defendant.**  The defendant
8  requests the name of any witness who made an arguably favorable statement
9  concerning the defendant or who could not identify him or who was unsure of
10  his identity, or participation in the crime charged.  Jackson v. Wainwright, 390
11  F.2d 288 (5th Cir. 1968); Chavis v. North Carolina, 637 F.2d 213, 223 (4th Cir.
12  1980); Jones v. Jago, 575 F.2d 1164,1168 (6th Cir.), cert. denied, 439 U.S. 883
13  (1978); Hudson v. Blackburn, 601 F.2d 785 (5th Cir. 1979), cert. denied, 444 U.S.
14  1086 (1980);

15  (16)  **Statements Relevant to the Defense.**  The defendant requests
16  disclosure of any statement that may be "relevant to any possible defense or
17  contention" that he might assert.  United States v. Bailleaux, 685 F.2d 1105 (9th
18  Cir. 1982);

19  (17)  **Jencks Act Material.**  Although this Court has ordered the
20  production of all statements that are discoverable pursuant to the Jencks Act,
21  The defendant asserts that a verbal acknowledgment that "rough" notes
22  constitute an accurate account of the witness' interview is sufficient for the
23  report or notes to qualify as a statement under §3500(e)(1).  Campbell v. United
24  States, 373 U.S. 487, 490-92 (1963). In United States v. Boshell, 952 F.2d 1101 (9th
25  Cir. 1991), the Ninth Circuit held that when an agent goes over interview notes
26  with the subject of the interview the notes are then subject to the Jencks Act. The
27  defense requests pre-trial production of all Jencks material to expedite
28  cross-examination and to avoid lengthy recesses during trial;

1  (18) **Giglio Information.** Pursuant to <u>Giglio v. United States,</u> 405 U.S.
2  150 (1972), The defendant requests all statements and/or promises, express or
3  implied, made to any government witnesses, in exchange for their testimony or
4  other assistance in this case, and all other information that could arguably be
5  used for the impeachment of any government witnesses;

6  (19) **Personnel Records of Government Officers.** The defendant
7  requests all citizen complaints and other related internal affairs documents
8  involving any of the law enforcement officers who were involved in the
9  investigation of him, pursuant to <u>Pitchess v. Superior Court,</u> 11 Cal. 3d 531, 539
10 (1974). Because of the sensitive nature of these documents, defense counsel will
11 not be able to procure them from any other source;

12 (20) **Government Examination of Law Enforcement Personnel Files.**
13 The defendant requests that the government examine the personnel files and
14 any other files within its custody, care or control, or which could be obtained by
15 the government, for all testifying witnesses, including testifying officers. The
16 defendant requests that these files be reviewed by the government attorney for
17 evidence of perjurious conduct or other like dishonesty, or any other material
18 relevant to impeachment, or any information that is exculpatory, pursuant to its
19 duty under <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991). The
20 obligation to examine files arises by virtue of the defense making a demand for
21 their review: The Ninth Circuit in Henthorn remanded for in camera review of
22 the agents' files because the government failed to examine the files of agents
23 who testified at trial. This Court should therefore order the government to
24 review all such files for all testifying witnesses and turn over any material
25 relevant to impeachment or that is exculpatory prior to trial;

26 21. **Notice and a Written Summary of Any Expert Testimony**
27 Under Rule 16(a)(1)(E), "[a]t the defendant's request, the government shall
28 disclose to the defendant a written summary of testimony the government

- 7 -

- 08 cr 0139-BEN

1  intends to use under Rules 702, 703 or 705 of the Federal Rules of Evidence
2  during its case-in-chief at trial.  This summary must describe the witness'
3  opinions, the basis and the reasons therefore, and the witness' qualifications."
4  The defendant specifically requests the government give them a written
5  summary and notice of any expert testimony that the government intends to
6  introduce.

      22.    **The A-File for Raul Torres-Garcia**

The government claims that the defendant is Raul Torres-Garcia, and that he has been deported in the past.  The defendant requests that the government provide to the defense all A-Files and deportation tapes related to any identity alleged in this case.

### III.
### THIS COURT SHOULD SEVER THE COUNTS

**A.**    **The Federal Rules of Criminal Procedure Require Severance in This Case**.

The issue regarding whether a "misjoinder of charges" exists here is a question of law for this Court to resolve and is reviewed *de novo* by the appellate courts.  See United States v. Sarkisian, 197 F.3d 966, 975 (9th Cir. 1999).

Federal Rule of Criminal Procedure 8(a) provides for the joinder of two or more offenses if the offenses are (1) of the same or similar character; (2) based on the same act or transaction; or (3) connected together or part of a common scheme or plan.  Fed. R. Crim. P. 8(a); see also United States v. Kinslow, 860 F.2d 963, 966 (9th Cir. 1988), overruled on other grounds by United States v. Brackeen, 969 F.2d 827 (9th Cir. 1992).  Thus, the Court must find that one of the conditions listed in Fed. R. Crim. P. 8(a) exist or sever the two counts.  The defendant is alleged to have committed three separate offenses (four counts) on one date.  Joinder of the charges is legally incorrect and would unduly and

- 8 -

-   08 cr 0139-BEN

1 unfairly prejudice The defendant's ability to receive a fair trial; thus, infringing
2 upon his due process rights.
3       Joinder of the two offenses fails the similarity requirements of Rule 8
4 because the two counts are not of "the same or similar character."  The alleged
5 violation in Count 1 and Count 2 is a smuggling offense.  This is in contrast to
6 Counts 3 where the violation centers on his being a deported alien.  Finally,
7 Count 4 is an aggravated identity theft counts.
8       Similarly, the counts are not "based on the same act or transaction or on
9 two or more acts or transactions connected together or constituting parts of a
10 common scheme or plan."  The alleged improper act relating to Count 1 and
11 Count 2 is the defendant's smuggling.  On the contrary, in Count 3 the
12 defendant's alleged criminal act was the fact of his prior deportation.  Because
13 the importation of drugs, being deported, and aggravated identity theft are so
14 differnt, the Counts are based on different acts.
15       Similarly, the three separate types of counts are not connected through a
16 common scheme or plan.  To determine whether the Counts are sufficiently
17 connected together, the Court looks for a logical relationship between the
18 offenses. <u>Sarkisian</u>, 197 F.3d at 975.  Although allegedly committed close in
19 time, the three groups of offenses are not connected.  Therefore, severance is
20 required under Fed. R. Crim. P. 8.
21       The law is clear that the validity of a Rule 8 joinder is based <u>solely</u> on the
22 allegations in the indictment. <u>See</u> <u>United States v. Terry</u>, 911 F.2d 272, 276 (9th
23 Cir. 1990) (emphasis added).  While the broad policies favor joinder and the
24 word "'transaction' is to be interpreted flexibly and 'may comprehend a series of
25 related occurrences," the indictment must allege some commonality between the
26 joined offenses. <u>Id.</u>  In this case, the indictment completely fails to allege any
27 commonality between the two offenses.  The government has made no effort in
28 the indictment to suggest the two counts are (1) of the same or similar character;

(2) based on the same act or transaction; or (3) connected together or constituting a common scheme or plan.  As a result, the counts are improperly joined and the Court must order a severance.

**B.     The Extreme Prejudice to The defendant That Results from Joinder of the Counts Requires Severance in the Interest of Justice.**

If this Court does not find improper joinder of offenses per Fed. R. Crim. P. 8 as argued above, it should still sever the trials for the three charges in the indictment because of the extreme prejudice that the defendant would suffer if the offenses were tried together.  Rule 14 is captioned: "Relief from Prejudicial Joinder," and provides that if joinder "in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts . . . ."  Fed. R. Crim. P. 14(a).

If these counts are tried together, the defendant will be forced to defend a status crime that may involve technical defenses, along with an importation defense and a defense to identity theft.  Also, the prosecution of one crime will include proof of a deportation, which will be very technical.  Likewise, the defense of the other counts will likewise be unfairly prejudiced by a joint trial.  Thus, this Court should sever.

**C.     Precedent Supports Severance of These Two Distinct Offenses.**

In United States v. Lewis, 787 F.2d 1318 (9th Cir. 1986), the Ninth Circuit acknowledged that "[t]here is a high risk of undue prejudice whenever . . . joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible."  Id. at 1321 (quotation and citation omitted).  Thus, the Court "recognize[d] that the danger that the jury's perception of the defendant will be adversely affected by the evidence of the prior crimes is so strong as to create a presumption favoring severance."  Id. at 1322.

- 10 -

- 08 cr 0139-BEN

1  This Court should rely upon the Ninth Circuit's consideration of
2 improper joinder issues as addressed in <u>Sarkisian</u> and <u>Bean v. Calderon</u>, 163
3 F.3d 1073 (9th Cir. 1998). These cases indicate that severance of iodine charge
4 from the attempted importation of methamphetamine charge is necessary.
5  In <u>Sarkisian</u>, the Ninth Circuit held that joinder in the same indictment of
6 offenses of extortion and trafficking in stolen auto parts was error because there
7 was "not a sufficient logical relationship between them" — it was "not an
8 instance where one criminal activity naturally flow[ed] from separate criminal
9 conduct." <u>Sarkisian</u>, 197 F.3d at 975.
10  One year earlier, in <u>Bean</u>, the Ninth Circuit reversed a conviction resulting
11 from misjoined counts. In <u>Bean</u>, the petitioner was charged in state court with
12 two separate murders that occurred three days apart. 163 F.3d at 1075-76. Over
13 his objection, the trial court consolidated the two charges in one trial. <u>Id.</u> The
14 Ninth Circuit held that trying the two charges together violated due process. <u>Id.</u>
15 at 1083. It found there is a "high risk of undue prejudice whenever . . . joinder of
16 counts allows evidence of other crimes to be introduced in a trial of charges with
17 respect to which the evidence would otherwise be inadmissible." <u>Id.</u> at 1084
18 (quoting <u>United States v. Lewis</u>, 787 F.2d 1318, 1322 (9th Cir. 1986)). Further, the
19 court recognized studies establishing "that joinder of counts tends to prejudice
20 jurors' perceptions of the defendant and of the strength of the evidence on both
21 sides of the case." <u>Id.</u> The court based its finding of prejudice on the facts that:
22 (1) the evidence was not cross-admissible, and (2) the jury may have considered
23 the two charges in concert as reflecting the defendant's modus operandi.
24  Accordingly, the court observed that the jury could not "reasonably [have
25 been] expected to 'compartmentalize the evidence' so that evidence of one crime
26 [did] not taint the jury's consideration of another crime," <u>Bean</u>, 163 F.3d at 1084
27 (quoting <u>United States v. Johnson</u>, 820 F.2d 1065, 1071 (9th Cir. 1987)), when the
28 State's closing argument and the import of several instructions it heard urged it

1  to do just the opposite. Id. Thus, it found the jury instructions did little to
2  lessen the prejudice from the joinder. While the Court affirmed one conviction
3  that was supported by "strong" evidence, it found conviction on the other
4  murder, robbery, and burglary count violated due process and therefore,
5  reversed. Id. at 1086.

6  Here, the evidence the different offenses would not be cross-admissible
7  had the government chosen to charge them separately. The offenses do not have
8  common physical evidence, except for — perhaps — the time they occured.
9  Thus, like in Bean, the jury, even if instructed to do otherwise, could not
10 compartmentalize the evidence as to each offense and would likely deduce guilt
11 from one offense from inadmissible evidence from the other. As a result, like in
12 Sarkisian and Bean, misjoinder of the two importation charges here
13 unquestionably would prejudice The defendant by its "substantial and injurious
14 effect or influence in determining the jury's verdict" as to each alleged charge.
15 See United States v. Lane, 474 U.S. 438, 449 (1986).

**IV.**
**THIS COURT SHOULD SUPPRESS STATEMNTS**

**A.    The Government Violated Miranda**

The Supreme Court has held that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 444 (1966).

This Court must first examine whether the defendant was in custody when he was questioned; then it must determine if any questioning constituted interrogation. If this Court determines that the defendant was subjected to custodial interrogation, then it must determine if the government's agents complied fully with Miranda's dictates.

1  **1.  The defendant Was In Custody When He Was**
2  **Questioned.**

3  Custody is defined in the <u>Miranda</u> context as a situation in which the
4  suspect reasonably believes he is not free to leave.  <u>United States v. Estrada-</u>
5  <u>Lucas</u>, 651 F.2d 1261, 1265 (9th Cir. 1980).  In other words, a person is in custody
6  if he has been arrested or otherwise deprived of his freedom of action in any
7  significant way.  <u>See</u> <u>Orozco v. Texas</u>, 394 U.S. 324, 327 (1969).
8  The defendant was in custody and not free to leave the police station at
9  the time he made his statement.  Any argument that he was not in custody is
10  meritless.

11  **2.  Agents Interrogated The Defendant When They**
12  **Interviewed Him**

13  The second prong of the <u>Miranda</u> test is interrogation.  The definition of
14  interrogation was established in <u>Rhode Island v. Innis</u>, 446 U.S. 291 (1980):
15  words or actions by law enforcement officers "reasonably likely to elicit an
16  incriminating response."  This court should look to the context of the
17  questioning to determine whether an incriminating response was sought.  For
18  example, routine questioning about biographical information has been held to
19  be interrogation when the questions are asked by Border Patrol agents who
20  suspect the target of their questions of being a deported alien.  <u>United States v.</u>
21  <u>Gonzalez-Sandoval</u>, 894 F.2d 1043, 1047 (9th Cir. 1990); <u>United States v. Equiha-</u>
22  <u>Juarez</u>, 851 F.2d 1222, 1225-27 (9th Cir. 1988).   The questioning in this case was
23  an interrogation.

24  **3.  Agents Failed To Comply With Miranda Before**
25  **Interrogating The defendant**

26  In deciding <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), the United States
27  Supreme Court recognized that custodial interrogation presents such a serious
28  threat to accused persons' Fifth Amendment right against self-incrimination that

1  it directed law enforcement officers to take great pains to protect those rights.
2  Thus, government agents have a duty to warn suspects of their full panoply of
3  rights regarding interrogation <u>before</u> any custodial interrogation begins.  The
4  defendant disputes any allegation that he was advised of his <u>Miranda</u> rights
5  before custodial interrogation.

6  Because agents failed to comply with the strict requirements of <u>Miranda</u>,
7  any statements they extracted from the defendant through custodial
8  interrogation must be suppressed.  Furthermore, the defendant requests a full
9  evidentiary hearing to establish all of the facts surrounding this custodial
10 interrogation and to aid this Court in deciding these motions.

11 **4.    The defendant Did Not Make A Knowing And**
12 **Voluntary Waiver Of Miranda**

13 Even if this Court finds that the defendant was given his <u>Miranda</u>
14 warnings, the defendant never made a knowing and intelligent waiver of those
15 rights.  In <u>Moran v. Burbine</u>, 475 U.S. 412 (1986), the United State Supreme
16 Court held that a waiver of <u>Miranda</u> rights must be "the product of a free and
17 deliberate choice rather than intimidation, coercion or deception.  Second, the
18 waiver must have been made with a full awareness, both of the nature of the
19 right to be waived and consequences of the decision to abandon it."  <u>Id</u>. at 421.

20 The defendant's statement was obtained by improper deception by the
21 agents, and therefore even if <u>Miranda</u> was complied with any waiver by The
22 defendant was the result of police deception.  Any waiver of <u>Miranda</u> was
23 therefore involuntarily under <u>Moran</u>, and his statement should be suppressed.

24 **5.    The Government Must Prove That All Of The**
25 **Defendant's Statements Were Voluntary Before They**
26 **May Be Admitted Into Evidence.**

27 Even when the procedural safeguards of <u>Miranda</u> have been satisfied, a
28 defendant in a criminal case is deprived of due process of law if his conviction is

1 founded, in whole or in part, upon an involuntary confession. <u>Jackson v.
2 Denno</u>, 378 U.S. 368, 387 (1964). The government bears the burden of proving
3 that a confession is voluntary by a preponderance of the evidence. <u>Lego v.
4 Twomey</u>, 404 U.S. 477, 483 (1972).

5     A statement must be the product of a rational intellect and free will to be
6 voluntary. <u>Blackburn v. Alabama</u>, 361 U.S. 199, 208 (1960). In determining
7 whether a defendant's will was overborne, the totality of the circumstances must
8 be considered. <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226 (1973). A
9 confession is deemed involuntary whether coerced by physical intimidation of
10 psychological pressure. <u>Townsend v. Sain</u>, 372 U.S. 293, 307 (1962). It must not
11 be extracted by any sort of threats of violence, nor obtained by any direct or
12 implied promises, however slight, nor by the exertion of any improper
13 influence. <u>United States v. Tingle</u>, 658 F.2d 1332, 1335 (9th Cir. 1981).

14     As noted above, the defendant's statement was coerced by police
15 deception and promises. The defendant's statement was therefore involuntary
16 and it must be suppressed.

## V.
## **THIS COURT SHOULD HOLD A FURTHER MOTIONS HEARING**

19     Counsel for The defendant has had to file motions in this case without the
20 benefit of full discovery. Thus, this Court should set this case for an additional
21 motions hearing after the government provides discovery. In particular, The
22 defendant has not seen the A-File, which is necessary to litigate 1326 motions; he
23 has not seen the discovery related to any statement, which is necessary to
24 litigate a statements motions; he has not seen discovery related to the
25 identification process, which is necessary to litigate issues related to
26 identification.

- 15 -

- 08 cr 0139-BEN

# VI.
# **CONCLUSION**

For the foregoing reasons, this Court should grant the above motions.


Dated: August 13, 2008                    Respectfully submitted,


    /S/ Knut S. Johnson
**Knut S. Johnson, Esq. for
The defendant**