1  KAREN P. HEWITT
   United States Attorney
2  REBECCA S. KANTER
   Assistant U.S. Attorney
3  California State Bar No. 230257
   United States Attorney's Office
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Phone: (619) 557-6747
   Fax: (619) 235-4716
6  E-mail: rebecca.kanter@usdoj.gov

7
   Attorneys for Plaintiff
8  United States of America

9
                    UNITED STATES DISTRICT COURT
10
                  SOUTHERN DISTRICT OF CALIFORNIA
11

12  UNITED STATES OF AMERICA,          )  Criminal Case No. 08cr0139-BEN
                                       )
13                 Plaintiff,          )  **RESPONSE AND OPPOSITION TO**
                                       )  **DEFENDANT'S MOTIONS:**
14         v.                          )
                                       )  **(1)  TO COMPEL DISCOVERY**
15                                     )  **(2)  TO SEVER COUNTS**
    RAUL TORRES-GARCIA,                )  **(3)  TO SUPPRESS STATEMENTS**
16         (a.k.a. ALBERTO JOSE        )  **(4)  TO FILE FURTHER MOTIONS**
           DEL MURO-GUERRERO),         )
17                                     )     Date:         September 22, 2008
                   Defendant.          )     Time:         2:00 p.m.
18                                     )     Courtroom:    3
                                       )
19  _____ )     The Honorable Roger T. Benitez

20         COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

21  United States Attorney, Karen P. Hewitt, and Assistant U.S. Attorney Rebecca S. Kanter, and hereby

22  files its Response and Opposition to Defendant's Motions to Compel Discovery, Sever Counts, Suppress

23  Statements and File Further Motions.  This Response and Opposition is based upon the files and records

24  of this case, together with the attached Statement of Facts, Memorandum of Points and Authorities, as

25  well as the Government's Motion for Reciprocal Discovery.

26  / /

27  //

28  //

                                                          Criminal Case No. 08cr0139-BEN

**I**

**STATEMENT OF FACTS**

**A.    Apprehension**

On January 7, 2008, at approximately 6:13 a.m., Raul Torres-Garcia ("Defendant") drove a 1982 white Chevrolet truck to the Calexico East Port of Entry.  Defendant applied for entry into the United States and presented Customs and Border Protection Officer E. Bosquet with a California birth certificate and an identification card bearing the name Alberto Jose Del Muro Guerrero.  Defendant stated that he was going to Calexico, California to go shopping.  Officer Bosquet questioned whether Defendant was being truthful about his citizenship and referred him to secondary inspection.

In the vehicle secondary lot, CBP Officer S. Baca observed a non-factory compartment near the gas tank.  Canine Enforcement Officer B. Pyburn screened the vehicle utilizing his narcotics detection dog Slate.  Slate alerted to the flatbed area of the truck.  Officers cut into the flatbed of the truck and found 12 packages in a non-factory compartment in the flatbed.  The total weight of the packages was 108.08 kilograms (237.78 pounds.)

At 8:00 a.m., Immigration and Customs Enforcement Agent Hugo Leon advised Defendant that he was under arrest.  Defendant was advised of his constitutional rights at 10:10 a.m.  Defendant waived his rights orally and in writing and agreed to speak to agents without an attorney present.  Defendant claimed to be a United States Citizen born in California.  He denied knowledge of the marijuana concealed in the truck.  He stated that he was going to the Santo Tomas Swap Meet in Calexico to purchase a washer and dryer.  He said he is unemployed and that he purchases items such as washers and dryers at the swap meet and resells them to make money.

Defendant stated that he purchased the truck five to six weeks previously for $1,500 in San Luis, Rio Colorado, Mexico from an unknown individual he met at a park.  He said he had the $1,500 cash with him to buy the truck.  Defendant claimed that he had possession of his truck since he purchased it, except for when he loaned the truck to "Angel Sanchez" eight days earlier.  Defendant said he loaned his truck to Sanchez to move some items.  Defendant said he was arrested many years before for drunk driving in Madera, California; he denied any other arrests.  Defendant had $849 in his possession.

Defendant was transported to the Imperial County Jail.  While being transported to jail,

1    Defendant told Agent Leon that if Agent Leon would return the money that was seized from him, he

2    would provide Agent Leon with names and addresses.  Defendant stated that everything he had said was

3    a lie and that the agents had nothing for their investigation.

4    **B.**    **Criminal History**

5            Defendant has numerous prior arrests and convictions under various aliases.  Defendant has

6    multiple convictions for Illegal Entry beginning on September, 15, 1979, when he received a sentence

7    of 120 days jail.  On September 15, 1986, he was convicted of Illegal Entry and received a four month

8    custodial sentence.  Defendant also has numerous convictions for False Claim to U.S. Citizenship,

9    including a conviction on June 1, 1984 for which he received a term of imprisonment of two years.

10    Defendant's history in the Southern District of California since 1990 is extensive and includes the

11    following cases:

12            •    91CR0898-N:    18 U.S.C. §911 – False Claim to U.S. Citizenship – 21 months

13            •    94CR0296-B:    18 U.S.C. §911 – False Claim to U.S. Citizenship – 30 months

14            •    98CR2287-K:    8 U.S.C. § 1326 – Deported Alien Found in the U.S. – 33 months;
                                  18 U.S.C. §911 – False Claim to U.S. Citizenship – 33 months
15                                (concurrent)

16            •    01CR0210-W:    8 U.S.C. § 1326 – Deported Alien Found in the U.S. – 37 months;
                                  18 U.S.C. §911 – False Claim to U.S. Citizenship – 36 months
17                                (concurrent)

18            •    05CR1714-JM:   18 U.S.C. §911 – False Claim to U.S. Citizenship – dismissed;
                                  18 U.S.C. §1028A(a)(1) – Aggravated Identity Theft – dismissed
19

20    **C.**    **Immigration History**

21            Defendant has numerous prior removals and exclusions.  On March 19, 1998, and again on

22    August 22, 2005, Defendant was ordered deported to Mexico after a hearing in front of an Immigration

23    Judge.  Defendant has also been deported on the following occasions: October 23, 1997, December 2,

24    2000, October 21, 2004, February 26, 2007, and November 17, 2007.

25    **D.**    **Other Events – Social Security Benefits Activities**

26            On July 17, 2007, Defendant went to the El Centro Social Security office to report a change of

27    address for the Social Security Insurance benefits for Alberto Jose Del Muro.  Defendant requested that

28    the benefit checks be sent to a post-office box in Calexico, California.  Defendant returned to the office

on July 18, 2007, August 24, 2007 and October 15, 2007, attempting to effectuate the change of address for the Social Security benefits.  Defendant provided various documents to establish his identity as Alberto Jose Del Muro, including the same birth certificate and identification card he presented at the Port of Entry on January 7, 2008.

The post-office box number provided by Defendant is rented to the Apostolic Assembly Church in Calexico, California.  The church pastor indicated that the person he knows as Alberto Jose Del Muro is homeless and uses the church's post-office box to receive mail.

On February 20, 2008, the real Alberto Jose Del Muro Guerrero was contacted at his home in Chowchilla, California.  He verified the details of his identity.  He stated that he is aware of the imposter using his identity and has testified against Defendant 4-5 times in the past in San Diego, California.

**II**

**DEFENDANT'S MOTIONS TO COMPEL DISCOVERY**

The Government has provided to Defendant approximately 228 pages of discovery, which includes the reports from the Customs and Border Protection Officers, Immigration and Customs Enforcement Agent, Social Security office, summaries of the statements made by Defendant, an inventory of Defendant's property, copies of the documents found in his possession and in the vehicle, and photographs of the vehicle and the narcotics.  The Government has also produced a DVD of the Defendant's post-arrest statement.

**(1)     Defendant's Statements**

The Government recognizes its obligation, under Rules 16(a)(1)(A) and 16(a)(1)(B), to provide to Defendant the substance of Defendant's oral statements and written statements.  (Unless otherwise noted, all references to "Rules" refers to the Federal Rules of Criminal Procedure.)  The Government has produced all of the Defendant's statements that are known to the undersigned Assistant U.S. Attorney at this date except for the tape of Defendant's deportation hearing, which will be produced as soon as it is received.   If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be promptly provided.

//

//

1  **(2)**      <u>Report of Scientific Tests or Examinations and Expert Reports</u>

2       At this time, the only scientific test that the Government is aware of is an analysis of the

3  marijuana by the DEA laboratory.  The Government has not yet received the results of that analysis, but

4  will provide Defendant with the results of any scientific tests or examinations in accordance with Rule

5  16(a)(1)(F) when those tests results are received.

6       The United States anticipates retaining an expert to determine whether Defendant's fingerprints

7  match the prints on the deportation documents in his A-file.  The United States will comply with its

8  obligation under Rule 16(a)(1)(G) to provide a written summary of such testimony in advance of trial.

9  **(3)**      <u>Brady and Giglio Material</u>

10       The Government will perform its duty under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) to disclose

11  material exculpatory information or evidence favorable to Defendant when such evidence is material

12  to guilt or punishment.   The Government recognizes that its obligation under <u>Brady</u> covers not only

13  exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on behalf

14  of the United States.  <u>See</u> <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972); <u>United States v. Bagley</u>,

15  473 U.S. 667, 676-77 (1985).  This obligation also extends to evidence that was not requested by the

16  defense.  <u>Bagley</u>, 473 U.S.  at 682; <u>United States v. Agurs</u>, 427 U.S. 97, 107-10 (1976).  "Evidence is

17  material, and must be disclosed (pursuant to <u>Brady</u>), 'if there is a reasonable probability that, had the

18  evidence been disclosed to the defense, the result of the proceeding would have been different.'"

19  <u>Carriger v. Stewart</u>, 132 F.3d 463, 479 (9th Cir. 1997) (<u>en banc</u>).  The final determination of materiality

20  is based on the "suppressed evidence considered collectively, not item by item." <u>Kyles v. Whitley</u>, 514

21  U.S. 419, 436-37 (1995).

22       <u>Brady</u> does not, however, mandate that the Government open all of its files for discovery.  <u>See</u>

23  <u>United States v. Henke</u>, 222 F.3d 633, 642-44 (9th Cir. 2000) (<u>per curiam</u>).  Under <u>Brady</u>, the United

24  States is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (<u>see</u> <u>United</u>

25  <u>States v. Smith</u>, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from other

26  sources (<u>see</u> <u>United States v. Bracy</u>, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that the

27  defendant already possesses (<u>see</u> <u>United States v. Mikaelian</u>, 168 F.3d 380-389-90 (9th Cir. 1999)

28  <u>amended by</u> 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S.

1    Attorney could not reasonably be imputed to have knowledge or control over.  See United States v.

2    Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001).    Brady does not require the Government "to create

3    exculpatory evidence that does not exist," United States v. Sukumolahan, 610 F.2d 685, 687 (9th Cir.

4    1980), but only requires that it "supply a defendant with exculpatory information of which it is aware."

5    United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976).

6    　　　　An agreement that the Government makes with a witness for testimony in exchange for money

7    or in exchange for favorable treatment in the criminal justice system is generally subject to disclosure

8    as impeachment evidence under Brady and Giglio.  See United States v. Kojayan, 8 F.3d 1315, 1322-23

9    (9th Cir. 1993); Benn v. Lambert, 238 F.3d 1040, 1054-60 (9th Cir. 2002).    The Government is not

10   aware of any Giglio information related to this case.  If the Government discovers the existence of

11   Giglio information, the information will be provided to the Defendant.

12   **(4)    Information That May Result in a Lower Sentence Under the Guidelines or 18 U.S.C.
         Section 3553**

13

14   　　　　The Government has provided and will continue to provide Defendant with all Brady material

15   that may result in mitigation of Defendant's sentence.  Nevertheless, the Government is not required to

16   provide information bearing on Defendant's sentence until after Defendant's conviction or guilty plea

17   and prior to his sentencing date.  See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988)

18   (no Brady violation occurs "if the evidence is disclosed to the defendant at a time when the disclosure

19   remains in value").

20   **(5)    Defendant's Prior Record**

21   　　　　The Government has provided Defendant with a criminal rap sheet as well as information,

22   including case numbers, of Defendant's prior cases in the Southern District of California.    The

23   Government thereby has and will continue to fulfill its duty of discovery under Rule 16(a)(1)(D).[1/]  See

24   United States v. Audelo-Sanchez, 923 F.2d 129 (9th Cir. 1990).  The Government has identified

25   additional documents reflecting Defendant's prior criminal record in the Defendant's A-file, and will

26

27   　　　　[1/]    Defendant requests evidence of his prior record pursuant to Rule 16(a)(1)(B).  Rule
28   16(a)(1)(B) relates to prior written or recorded statements.  The Government interprets this as a request
     pursuant to Rule 16(a)(1)(D), which is the section of the discovery rule pertaining to a defendant's prior
     record.

1    provide those to Defendant with the rest of the A-file discovery prior to the next hearing date.

2    **(6)      Any Proposed 404(b) Evidence**

3         The Government will disclose in advance of trial the general nature of any "other bad acts"

4    evidence that the United States intends to introduce at trial pursuant to Fed. R. Evid. 404(b).   Evidence

5    should not be treated as "other bad acts" evidence under Fed. R. Evid. 404(b) when the evidence

6    concerning the other bad acts and the evidence concerning the crime charged are "inextricably

7    intertwined."   United States v. Soliman, 812 F.2d 277, 279 (9th Cir. 1987).

8    **(7)      Evidence Seized**

9         The Government has already provided a copy of all documentary evidence seized from

10   Defendant and his vehicle in connection with this case.   The Government therefore has complied and

11   will continue to comply with Rule 16(a)(1)(E)[2] in allowing Defendant an opportunity, upon reasonable

12   notice, to examine, inspect, and copy all evidence seized that is within its possession, custody, or

13   control, and that is either material to the preparation of Defendant's defense, or is intended for use by

14   the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to

15   Defendant.

16   **(8)      Request for Preservation of Evidence**

17        The Constitution requires the Government to preserve evidence "that might be expected to play

18   a significant role in the suspect's defense."   California v. Trombetta, 467 U.S. 479, 488 (1984).   To

19   require preservation by the Government, such evidence must (1) "possess an exculpatory value that was

20   apparent before the evidence was destroyed," and (2) "be of such a nature that the defendant would be

21   unable to obtain comparable evidence by other reasonably available means."   Id. at 489; see also Cooper

22   v. Calderon, 255 F.3d 1104, 1113-14 (9th Cir. 2001).

23        The Government has made every effort to preserve evidence it deems to be relevant and material

24   to this case, including sending a letter to the agency in charge on April 15, 2008 and again on August

25   27, 2008, requesting the specific preservation of evidence.   Further preservation by FP&F of the

26

27   ──────────────

28        [2]      Defendant requests production of evidence pursuant to Rule 16(a)(1)(C). Because Rule
     16(a)(1)(C) applies to organizational defendants, it is inapplicable in this case.  The Government
     construes this as a request under rule 16(a)(1)(E).

1    evidence requires a written court order, which Defendant has failed to provide to the Court for signature.

2    Given the efforts by the U.S. Attorney's office to preserve the evidence in this case, any failure to gather

3    and preserve evidence would not violate due process absent bad faith by the Government that results

4    in actual prejudice to the Defendant.  See Illinois v. Fisher, 540 U.S.1174, 124 S.Ct. 1200 (2004) (per

5    curiam); Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988); United States v. Rivera-Relle, 322 F.3d

6    670 (9th Cir. 2003); Downs v. Hoyt, 232 F.3d 1031, 1037-38 (9th Cir. 2000).

7        The Government is unaware of the existence of any dispatch tapes related to any of the incidents

8    Defendant has been charged with.

9    **(9)    Tangible Objects**

10       The Government has complied and will continue to comply with Rule 16(a)(1)(E)[3/] in allowing

11   Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy documents and

12   tangible objects that are within its possession, custody, or control, and that is either material to the

13   preparation of Defendant's defense, or is intended for use by the Government as evidence during its

14   case-in-chief at trial, or was obtained from or belongs to Defendant.  The Government need not,

15   however, produce rebuttal evidence in advance of trial.  United States v. Givens, 767 F.2d 574, 584 (9th

16   Cir. 1984).

17       Defendant includes in this request access to Defendant's Alien Registration File ("A-File").

18   (Def's Mem.  P. & A. at 4.)  The United States objects to this request.  This information is equally

19   available to Defendant through a Freedom of Information Act request.  Even if Defendant could not

20   obtain the A-File through such a request, the A-File itself is not discoverable under Rule 16, Brady or

21   any other constitutional or statutory provision.  The United States will disclose A-file documents it

22   intends to use in its case-in-chief.  The United States will also disclose A-file documents that constitute

23   Brady material and A-file documents that fall under Rule 16.

24       Although the United States will disclose relevant A-file *documents*, the A-file itself need not be

25   disclosed.  The A-File contains information that is not discoverable like internal government documents

26

27   ─────────────────

28       [3/]    Defendant makes this request under Fed. R. Crim. P. 16(a)(1)(C).  Rule 16(a)(1)(C)
     relates to organizational defendants.  Therefore, the Government interprets this as a request under Rule
     16(a)(1)(E), which  applies to the discovery of documents and objects.

and witness statements. *See* Fed. R. Crim. P. 16(a)(2). Witness statements would not be subject to production until after the witness for the United States testifies and provided that a proper motion is made by Defendant. *See* Fed. R. Crim. P. 16(a)(2) and 26.2. Defendant does not own the A-File, rather, it is an agency record. *Cf.* United States v. Loyola-Dominguez, 125 F.3d 1315 (9th Cir. 1997) (noting that A-File documents are admissible as public records). Of course, should the Court order inspection of relevant documents from the A-File, the United States will facilitate the inspection as it does in other cases.

**(10)    Evidence of Bias or Motive to Lie**

The Government recognizes its obligation under Brady and Giglio to provide evidence that could be used to impeach Government witnesses including material information regarding demonstrable bias or motive to lie. The Government is not aware of any evidence of any bias or motivation to lie on the part of prospective government witnesses. If the Government discovers the existence of information related to a government witness's bias or motive to lie, the information will be provided to the Defendant.

**(11)    Impeachment Evidence**

As discussed elsewhere, the Government recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses.

**(12)    Evidence of Criminal Investigation of Any Government Witness**

The Government objects to this request because Defendant is not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities. The Government is under no obligation to turn over the criminal records or rap sheet of its potential witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). The Government will, however, provide the conviction record, if any, which could be used to impeach witnesses the United States intends to call in its case-in-chief.

**(13)    Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity**

The Government recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses including material information related to perception, recollection, ability to communicate, or truth telling. The Government strenuously objects

to providing any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic because such information is not discoverable under Rule 16, <u>Brady</u>, <u>Giglio</u>, <u>Henthorn</u>, or any other Constitutional or statutory disclosure provision.

**(14)    Witness Addresses**

The Government has already provided Defendant with the reports containing the names, work addresses, and telephone numbers of the inspectors, officers and special agents whom asked questions of Defendant and found the marijuana in the vehicle.  In its trial memorandum, the Government will provide Defendant with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required.  <u>See</u> <u>United States v. Discher</u>, 960 F.2d 870 (9th Cir. 1992); <u>United States v. Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987).

The Government strenuously objects to providing the home addresses or the home or personal cellular telephone numbers to Defendant.  In non-capital cases, the Government is not even required to disclose the names of its witnesses prior to trial.  <u>United States v. Dishner</u>, 974 F.2d 1502, 1522 (9th Cir 1992); (<u>citing</u> <u>United States v. Steel</u>, 759 F.2d 706, 709 (9th Cir. 1985)); <u>United States v. Hicks</u>, 103 F.23d 837, 841 (9th Cir. 1996); <u>see also</u> <u>United States v. Bejasa</u>, 904 F.2d 137 (2d Cir. 1990) (holding that United States did not improperly deny defendant access to government witnesses whose telephone numbers and addresses the government refused to provide because defendant knew the identities of the government witnesses and presumably knew their telephone numbers or could have contacted them through the exercise of due diligence).

**(15)    Name of Witnesses Favorable to the Defendant**

The Government is not aware of the names of any witnesses favorable to the Defendant's case. If the Government discovers any witnesses favorable to Defendant, the names of such witnesses will be promptly provided.

**(16)    Statements Relevant to the Defense**

The Government will provide all statements relevant to Defendant as required by Rule 16, <u>Brady</u>, and <u>Jencks</u>.    The Government is not all possible information and evidence regarding any speculative defense claimed by Defendant. <u>Wood v. Bartholomew</u>, 516 U.S. 1, 6-8 (1995) (<u>per</u> <u>curiam</u>) (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory

1    evidence are not subject to disclosure under <u>Brady</u>).

2    //

3

4    **(17)    Jencks Act Material**

5    Rule 26.2 incorporates the Jencks Act, 18 U.S.C. §3500, into the Federal Rules of Criminal

6    Procedure. The Jencks Act requires that, after a Government witness has testified on direct examination,

7    the Government must give the Defendant any "statement" (as defined by the Jencks Act) in the

8    Government's possession that was made by the witness relating to the subject matter to which the

9    witness testified. 18 U.S.C. §3500(b). For purposes of the Jencks Act, a "statement" is (1) a written

10   statement made by the witness and signed or otherwise adopted or approved by her, (2) a substantially

11   verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement

12   by the witness before a grand jury. 18 U.S.C. §3500(e). If notes are read back to a witness to see

13   whether or not the government agent correctly understood what the witness was saying, that act

14   constitutes "adoption by the witness" for purposes of the Jencks Act. <u>United States v. Boshell</u>, 952 F.2d

15   1101, 1105 (9th Cir. 1991) (<u>citing</u> <u>Goldberg v. United States</u>, 425 U.S. 94, 98 (1976)). There is no

16   applicable Jencks material at this time. If the case proceeds to trial, the Government will produce any

17   materials covered by the Jencks Act relevant to the testifying witness(es).

18   **(18)    Giglio Information**

19   An agreement that the Government makes with a witness for testimony in exchange for money

20   or in exchange for favorable treatment in the criminal justice system is generally subject to disclosure

21   as impeachment evidence under <u>Brady</u> and <u>Giglio</u>. <u>See</u> <u>United States v. Kojayan</u>, 8 F.3d 1315, 1322-23

22   (9th Cir. 1993); <u>Benn v. Lambert</u>, 238 F.3d 1040, 1054-60 (9th Cir. 2002). The Government is not

23   aware of any <u>Giglio</u> information related to this case. If the Government discovers the existence of

24   <u>Giglio</u> information, the information will be provided to the Defendant.

25   **(19) & (20)    Henthorn Material**

26   The Government will comply with <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991) and

27   request that all federal agencies involved in the criminal investigation and prosecution review the

28   personnel files of the federal law enforcement inspectors, officers, and special agents whom the

Government intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality.  United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992).   If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an in camera inspection and review.

**(21)    Expert Testimony**

The United States anticipates retaining an expert to determine whether Defendant's fingerprints match the prints on the deportation documents in his A-file.  The United states also anticipates utilizing an expert to testify as to the value of the narcotics in Defendant's vehicle and the fact that the substance in the car was marijuana.  The United States will comply with its obligation under Federal Rule of Criminal Procedure 16(a)(1)(G)[4] and Federal Rules of Evidence 702, 703, and 704 to provide a written summary of this and any other expert testimony in advance of trial.

**(22)    Defendant's A-File**

The United States will disclose A-file documents it intends to use in its case-in-chief.  The United States will also disclose A-file documents that constitute Brady material and A-file documents that fall under Rule 16.

**III**

**DEFENDANT'S MOTION TO SEVER COUNTS**

Defendant moves to sever counts one and two from counts three and four in the Superseding Indictment.  In deciding whether to sever the charges, the Court must consider Federal Rules of Criminal Procedures 8 and 14.  Federal Rule of Criminal Procedure 8 has been construed in favor of initial joinder, whereas Rule 14 is available as a remedy for prejudice that may develop during trial.  United States v. Jawara, 474 F.3d 565, 573 (9th Cir. 2007) (quotation omitted).

**A.    Joinder Is Appropriate Because the Offenses Are Based On the Same Act or Transaction and Are of the Same or Similar Character**

Rule 8 (a) provides for the joinder of offense, as follows:

---

[4]     Defendant cites Rule 16(a)(1)(E) in support of this request.  Because Rule 16(a)(1)(E) pertains to documents and objects, the United States interprets this as a request pursuant to Rule 16(a)(1)(G), which is the subsection dealing with expert notice.

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Fed. R. Crim. P. 8(a).  Pursuant to Rule 8(a), at least one of the three conditions must be satisfied for proper joinder.  See id. (citation omitted).

Here, Defendant is charged in counts one and two of the Superseding Indictment with the Importation of Marijuana and Possession of Marijuana with Intent to Distribute, respectively. Defendant does not dispute that these acts are both smuggling offenses of the same or similar character and based on the same act or transaction.

Defendant is charged in count three with being a deported alien attempting to enter the United States in violation of Title 8, United States Code, Section 1326(a) and (b).  Defendant is charged in count four with aggravated identity theft in violation of Title 18, United States Code, Section 1028A. Count four charges Defendant with using the means of identification of another person – specifically, the name and birth certificate of Alberto Jose Del Muro-Guerrero – in the commission of the immigration offense charged in count three.

In United States v. Sarkasian, 197 F.3d 966, 976 (9th Cir. 1999), joinder of extortion and trafficking charges was determined to be improper where there was an insufficient showing of a logical relationship.  In the present case, unlike in Sarkasian, the evidence of counts three and four have a logical relationship because the reason Defendant used the another identity of another to attempt to enter the United States is precisely because he is a previously deported alien with no right to enter.  See United States v. Chagra, 754 F.2d 1186, 1188 (5th Cir. 1985) (affirming propriety of joinder of obstruction of justice charge with charges of murdering a federal judge and conspiring to distribute narcotics because "[a]n indictment states a common scheme under Rule 8(a) when it alleges that a defendant has attempted to escape liability for one criminal offense through the commission of others"). In fact, Title 18, United States Code, Section 1028A requires that the identity theft be committed in connection to an immigration offense or other enumerated offense.  The charge in count three is therefore a precursor to the charge in count four.  The use of the identity of another – especially the identity of a United States citizen – is probative evidence of a defendant's knowledge and effort to enter

the United States illegally.  The evidence of the identity theft, therefore, is relevant to proving intent to knowingly enter the United States illegally.  Unlike in <u>Sarkasian</u>, a logical relationship exists and the evidence overlaps.   Therefore, counts three and four should not be severed from each other.

As to the relationships between the drug smuggling offenses charged in counts one and two, on the one hand, and the immigration offenses charged in counts three and four, on the other hand, they are properly joined because they are based on the same act and are connected with a common scheme or plan.  All four counts arise from a single act at the Calexico East Port of Entry on January 7, 2008: Defendant's attempt to enter the United States.  The fact that he did so with illegal drugs (counts one and two), that he was a deported alien at the time (count three) and used a false identity to do so (count four) does not detract from the essential fact that they are all tied to the same act of entering the United States on January 7, 2008.

Further, the identity theft charged in count four is an integral part of Defendant's scheme or plan with respect to the other counts.  As a previously deported alien, Defendant can only successfully enter or remain in the United States by fraudulent means, such as stealing and using the identity of a U.S. citizen.  This is precisely what Defendant did and has done for at least 18 years since he was first convicted in this district for making a False Claim to U.S. Citizenship.  Similarly, as a previously deported alien with no right to enter the United States, the only way for defendant to accomplish his scheme of importing marijuana would be to utilize a false claim to U.S. citizenship to facilitate his entry into the United States.  In this case, Defendant didn't merely claim to be a U.S. citizen – he presented the birth certificate of U.S. citizen Alberto Jose Del Muro-Guerrero to facilitate his illegal entry into the U.S. with illegal narcotics in his truck. The evidence – including the witnesses – that the Government would present as to counts three and four substantially overlap with the evidence in counts one and two because they arise out of the same events on January 7, 2008 when Defendant applied for admission at the Calexico, East Port of Entry.  Because the evidence to prove one crime is also relevant to the others, joinder is proper.  <u>Id.</u> (citing <u>United States v. Ford</u>, 632 F.2d 1354, 1372 (9th Cir. 1980); <u>United States v. Vasquez-Velasco</u>, 15 F.3d 833, 844 (9th Cir. 1994)).

**B.**      <u>**Joinder Is Not Prejudicial Because Defendant Has Put His Identity Squarely At Issue With Respect to All the Counts**</u>

Defendant argues that joinder is prejudicial under Rule 14.  Rule 14 provides:

> If it appears that a defendant or the government is prejudiced by joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

"[J]oinder is the rule rather than the exception."  United States v. Whitworth, 856 F.2d 1268, 1277 (9th Cir. 1988) (citation omitted) (affirming denial of motion to sever counts).  Severance is appropriate under Rule 14 only where the defendant makes a showing of "clear, manifest, or undue prejudice."  United States v. VonWillie, 59 F.3d 922, 930 (9th Cir. 1995).  That is, the defendant "must demonstrate that the joint trial impinged on a fundamental trial right or compromised the fairness of the proceedings in a tangible way."  United States v. Hanley, 190 F.3d 1017, 1027 (9th Cir. 1999).  See also United States v. Lewis, 787 F.2d 1318, 1321 (9th Cir. 1986) ("The defendant has the burden of proving that the joint trial was manifestly prejudicial.").

The determination whether to sever counts under Rule 14 is committed to the district court's sound discretion and will not be reversed absent an abuse of that discretion.  United States v. Lopez, 477 F.3d 1110, 1116 (9th Cir. 2007).  "The test for abuse of discretion by the district court is whether a joint trial was so manifestly prejudicial as to require the trial judge to exercise his discretion in but one way, by ordering a separate trial."  United States v. Decoud, 456 F.3d 996, 1008 (9th Cir. 2006).

Even when "the risk of prejudice is high . . . less drastic measures [than severance], such as limiting instructions, often will suffice to cure any risk of prejudice."  Zafiro v. U.S., 506 U.S. 534, 539 (1993).  Juries are presumed to follow proper limiting instructions, absent extraordinary circumstances.  Tak Sun Tan v. Runnels, 413 F.3d 1101, 1115 (9th Cir. 2005); see Zafiro, 506 U.S. at 540.

In the present case, the joinder of the counts is not manifestly prejudicial to Defendant because Defendant himself put the issues contained in counts three and four – issue of his legal status and identity – squarely in the center of this case and continues to do so.  Defendant has insisted at every single hearing in this case that he is Alberto Jose Del Muro-Guerrero, and has continued to assert that in his numerous *ex parte* letters sent to this Honorable Court.  The real Alberto Jose Del Muro-Guerrero is an innocent individual living with his family in Chowchilla, California, who has had no involvement in drug smuggling at the Calexico Port of Entry.  To permit the Defendant to perpetuate the fraud of his

15                    Criminal Case No. 08cr0139-BEN

identity in front of a jury on a trial regarding only the drug charges would undermine the ends of justice sought by this indictment: to vindicate the interests of an innocent U.S. citizen whose identity has been stolen and whose name has been repeatedly dragged through the mud as the Defendant has used it to commit various crimes over the years, including the most recent crime of importing marijuana. It would be a sham to conduct a trial on counts one and two in front of the jury calling the Defendant by the name of the victim, Alberto Jose Del Muro-Guerrero. Yet the alternative – to address the Defendant as charged by his real name, Raul Torres-Garcia, would create confusion unless presented in conjunction with the issues of identity charged in counts three and four. The issue of his identity has to be resolved to properly convict Defendant under the correct name with the crimes charged in counts one and two. See, e.g., United States v. Mitchell, 502 F.3d 931, 963 (9th Cir. 2007) (trial court properly exercised discretion not to sever counts under Rule 14 where evidence on one count "would have been largely admissible a separate trial" on the other count); United States v. Nettles, 476 F.3d 508, 516 (7th Cir. 2007) (motion to sever counts no erroneous where "the offenses were sufficiently intertwined so that the evidence of each separate offense would have been admissible in a separate trial for the other offense").

This case is distinguishable from Bean v. Calderon, 163 F.3d 1073 (9th Cir. 1998), in which a defendant was charged in state court with two separate murders that occurred three days apart. (Def. Mem. P. & A. at 11.) Here, the acts charged in all four counts occurred on the same day. Moreover, none of the acts is of the violent nature in Bean that would carry the same inherent high risk of prejudice.

In any event, Defendant cannot persuasively establish that the jury cannot be instructed and properly understand that each count depends on different evidence and should be considered separately. The Court, therefore, may properly consider that any likelihood of undue prejudice is outweighed by the economy of judicial resources and the ability of a jury to follow straightforward instructions.

## IV.

## DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

Defendant moves to suppress statements and requests that the United States prove that all statements were voluntarily made, and made after a knowing and intelligent Miranda waiver. Defendant

contends that 18 U.S.C. § 3501 mandates an evidentiary hearing be held to determine whether Defendant's statements were voluntary. Because Defendant has failed to file an affidavit as required by the local rules, there is no disputed issue of fact to resolve, and an evidentiary hearing is unwarranted. Moreover, the undisputed facts demonstrate that Defendant knowingly and voluntarily waived his Miranda rights and provided a voluntary statement to agents. Therefore, the motion to suppress should be denied.

## A.    Defendant Has Failed to Adduce Facts Sufficient to Grant an Evidentiary Hearing

Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of the defendant's motion. See United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (where "defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer, . . . . the district court was not required to hold an evidentiary hearing"); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements); Crim. L.R. 47.1. The local rule further provides that "the Court need not grant an evidentiary hearing where either party fails to properly support its motion for opposition."

Defendant has failed to dispute by way of declaration or any sworn statement any of the facts in the probable cause statement. Therefore, the Court should decline to conduct an evidentiary hearing since no issues of fact have been properly raised.

## B.    Defendant Was Read His Miranda Rights and Knowingly and Voluntarily Waived Them

A statement made in response to custodial interrogation is admissible under Miranda v. Arizona, 384 U.S. 437 (1966) and 18 U.S.C. § 3501 if a preponderance of the evidence indicates that the statement was made after an advisement of Miranda rights, and was not elicited by improper coercion. See Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and Miranda determinations; valid waiver of Miranda rights should not be found in the "absence of police overreaching").

17                Criminal Case No. 08cr0139-BEN

1    A valid <u>Miranda</u> waiver depends on the totality of the circumstances, including the background,

2  experience, and conduct of the  defendant.  <u>North Carolina v. Butler</u>, 441 U.S. 369, 374-75 (1979).  To

3  be knowing and intelligent, "the waiver must have been made with a full awareness of both the nature

4  of the right being abandoned and the consequences of the decision to abandon it."  <u>Moran v. Burbine</u>,

5  475 U.S. 412, 421 (1986).  The United States bears the burden of establishing the existence of  a valid

6  <u>Miranda</u> waiver.  <u>North Carolina v. Butler</u>, 441 U.S. at 373.  In assessing the validity of a defendant's

7  <u>Miranda</u> waiver, this Court should analyze the totality of the circumstances surrounding the

8  interrogations.  <u>See</u> <u>Moran v. Burbine</u>, 475 U.S. at 421.

9    Factors commonly considered include: (1) the defendant's age, <u>see</u> <u>United States v. Doe</u>, 155

10  F.3d 1070, 1074-75 (9th Cir. 1998) (<u>en</u> <u>banc</u>) (valid waiver because the 17 year old defendant did not

11  have trouble understanding questions, gave coherent answers, and did not ask officers to notify parents);

12  (2) the defendant's familiarity with the criminal justice system, <u>see</u> <u>United States v. Williams</u>, 291 F.3d

13  1180, 1190 (9th Cir. 2002) (waiver valid in part because defendant was familiar with the criminal justice

14  system from past encounters); (3) the explicitness of the <u>Miranda</u> waiver, <u>see</u> <u>United States v. Bernard</u>

15  <u>S.</u>, 795 F.2d 749, 753 n.4 (9th Cir. 1986) (a written <u>Miranda</u> waiver is "strong evidence that the waiver

16  is valid"); <u>United States v. Amano</u>, 229 F.3d 801, 805 (9th Cir. 2000) (waiver valid where <u>Miranda</u>

17  rights were read to defendant twice and defendant signed a written waiver); and (4) the time lapse

18  between the reading of the <u>Miranda</u> warnings and the interrogation or confession.  <u>See</u> <u>Guam v. De la</u>

19  <u>Pena</u>, 72 F.3d 767, 769-70 (9th Cir. 1995) (valid waiver despite 15-hour delay between <u>Miranda</u>

20  warnings and interview).

21    In this case, Defendant was at least 50 years old and had numerous prior encounters with law

22  enforcement and the criminal justice system, including seven prior convictions right here in this district.

23  His <u>Miranda</u> rights were read to him explicitly in his native language (Spanish).  Defendant

24  acknowledged that he was read his Miranda rights and waived them in a signed waiver.  (Exh. A.)

25  Defendant's *unsworn* assertion that he "disputes any allegation that he was advised of his Miranda

26  rights" is without merit. (Def. Mem. P. & A. at 14.)

27    Defendant was clearly read his <u>Miranda</u> rights and agreed to waive them orally and in writing.

28  Based on the totality of the circumstances, Defendant's statements should not be suppressed because

1    his <u>Miranda</u> waiver was knowing, intelligent, and voluntary.

2        **2.    <u>Defendant's Statements Were Voluntary</u>**

3        The inquiry into the voluntariness of statements is the same as the inquiry into the voluntariness

4    of a waiver of <u>Miranda</u> rights.  <u>See</u> <u>Derrick v. Peterson</u>, 924 F.2d 813, 820 (9th Cir.1990).  Courts look

5    to the totality of the circumstances to determine whether the statements were "the product of free and

6    deliberate choice rather than coercion or improper inducement." <u>United States v. Doe</u>, 155 F.3d 1070,

7    1074 (9th Cir. 1998) (<u>en</u> <u>banc</u>).

8        A confession is involuntary if "coerced either by physical intimidation or psychological

9    pressure."  <u>United States v. Crawford</u>, 372 F.3d 1048, 1060 (9th Cir. 2004) (<u>quoting</u> <u>United States v.</u>

10   <u>Haswood</u>, 350 F.3d 1024, 1027 (9th Cir. 2003)).  In determining whether a defendant's confession was

11   voluntary, "the question is 'whether the defendant's will was overborne at the time he confessed.'"

12   <u>Clark v. Murphy</u>, 331 F.3d 1062, 1072 (9th Cir. 2003) (<u>quoting</u> <u>Haynes v. Washington</u>, 373 U.S. 503,

13   513 (1963)).  Psychological coercion invokes no per se rule.  <u>United States v. Miller</u>, 984 F.2d 1028,

14   1030 (9th Cir. 1993).  Therefore, the Court must "consider the totality of the circumstances involved

15   and their effect upon the will of the defendant." <u>Id.</u> at 1031 (<u>citing</u> <u>Schneckloth v. Bustamonte</u>, 412 U.S.

16   218, 226-27 (1973)).

17       In determining the issue of voluntariness, this Court should consider the five factors under 18

18   U.S.C. § 3501(b).  <u>United States v. Andaverde</u>, 64 F.3d 1305, 1311 (9th Cir. 1995).  These five factors

19   include: (1) the time elapsing between arrest and arraignment of the defendant making the confession,

20   if it was made after arrest and before arraignment; (2) whether such defendant knew the nature of the

21   offense with which he or she was charged or of which he was suspected at the time of making the

22   confession; (3) whether or not such defendant was advised or knew that he or she was not required to

23   make any statement and that any such statement could be used against him; (4) whether or not such

24   defendant had been advised prior to questioning of his or her right to the assistance of counsel; and (5)

25   whether or not such defendant was without the assistance of counsel when questioned and when giving

26   such confession.  18 U.S.C. § 3501(b).  All five statutory factors under 18 U.S.C. § 3501(b) need not

27   be met to find the statements were voluntarily made.  <u>See</u> <u>Andaverde</u>, 64 F.3d at 1313.

28       As discussed above, Defendant was read his <u>Miranda</u> rights, including his right to counsel and

1    his right to remain silent, prior to his post-arrest interview. He was read his rights and provided the

2    statement at 10:10 a.m., less than four hours after he was detained at the port of entry, therefore the time

3    elapsing between arrest and his statement was minimal. Defendant was arraigned the very next day on

4    January 8, 2008.

5        When he was interviewed, Defendant clearly knew the nature of the offense with which he was

6    suspected, having been specifically advised that he was going to be charged with Importation of

7    Marijuana. Although Defendant was not advised of the immigration charges at that time, it was only

8    because Defendant had up to that point successfully carried on his fraud of posing as a U.S. citizen.

9    Defendant had already suffered numerous felony criminal immigration convictions, and was released

10   from custody less than a year before after being in custody for two years on __identical__ 1326 and 1028A

11   charges. Defendant was, therefore, well familiar with the nature of the charges and the proceedings

12   which would eventually follow from his arrest. Defendant was specifically advised as part of the

13   Miranda warnings that he was not required to make any statement and that any such statement could be

14   used against him, a process he was very familiar with based on his previous law enforcement contacts.

15   *See* United States v. Williams, 291 F.3d 1180,1190-91 (9th Cir. 2002) (finding statements were

16   voluntary where Defendant was "quite familiar with the justice system from past encounters, received

17   Miranda warnings and validly waived his rights.")

18       Although the statements were made without the assistance of counsel, Defendant had been

19   specifically advised prior to questioning of his right to the assistance of counsel and stated that he was

20   willing to answer questions without an attorney. Because all of the factors in 18 U.S.C. § 3501(b) were

21   met, Defendant's statements were voluntary.

22       In addition, Defendant's statements were not the product of physical intimidation or

23   psychological pressure of any kind by any United States agent. Contrary to Defendant's *unsworn*

24   conclusory assertions in his moving papers that his "statement was obtained by improper deception by

25   the agents" and was "coerced by police deception and promises" (Def. Mem. P. & A. at 14, 15), there

26   is absolutely no evidence in the record of this case or before this Court that there was any improper

27   deception or that Defendant's will was overborne at the time of his statements. There was one person

28   and one person only who engaged in deception on January 7, 2008, and that was the Defendant, Raul

Torres-Garcia. Consequently, Defendant's motion to suppress his statements as involuntarily given should be denied.

## V.

## DEFENDANT'S MOTION FOR LEAVE TO FILE FURTHER MOTIONS

The Government does not object to the granting of leave to file further motions as long as the further motions are based on underlined newly discovered evidence or discovery provided by the Government subsequent to the instant motion at issue. For example, Defendant has yet to receive (but will receive prior to the next hearing date) documents from Defendant's A-file and a deportation hearing tape. Therefore, it would be appropriate for the Court to grant Defendant leave to file motions based exclusively on that evidence.

Defendant, however, specifically states that "he has not seen the discovery related to any statement." (Def. Mem. P. & A. at 15). Defendant, however, has in fact received discovery regarding his statement. Specifically, Defendant's prior attorney, Michael Messina, specifically acknowledged receiving a DVD of his client's post-arrest statement in a discovery receipt dated February 11, 2008. Moreover, in the same set of discovery, the United States produced the report of Immigration and Customs Enforcement Special Agent Hugo Leon with a summary of that post-arrest statement. Therefore, the United States opposes any request to file additional motions regarding Defendant's statements or any other evidence already produced in discovery.

## IV

## GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY

**A.**    **All Evidence That Defendant Intends To Introduce In His Case-In-Chief**

Since the Government will honor Defendant's request for disclosure under Rule 16(a)(1)(E), the Government is entitled to reciprocal discovery under Rule 16(b)(1). Pursuant to Rule 16(b)(1), the Government requests that Defendant permit the Government to inspect, copy and photograph any and all books, papers, documents, photographs, tangible objects, or make copies or portions thereof, which are within the possession, custody, or control of Defendant and which Defendant intends to introduce as evidence in his case-in-chief at trial.

The Government further requests that it be permitted to inspect and copy or photograph any

results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession and control of Defendant, which he intends to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendant intends to call as a witness. The Government also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the Government receives the reciprocal discovery to which it is entitled.

//

**B.     Reciprocal Jencks – Statements By Defense Witnesses (Other Than Defendant)**

Rule 26.2 provides for the reciprocal production of Jencks material. Rule 26.2 requires production of the prior statements of all witnesses, except a statement made by Defendant. The time frame established by Rule 26.2 requires the statements to be provided to the Government after the witness has testified. However, to expedite trial proceedings, the Government hereby requests that Defendant be ordered to provide all prior statements of defense witnesses by a reasonable date before trial to be set by the Court. Such an order should include any form in which these statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and reports.

**V**

**CONCLUSION**

For the foregoing reasons, the Government requests that the Court deny Defendant's motions, except where unopposed, and grant the Government's motion for reciprocal discovery.

DATED: September 2, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney


/s/**Rebecca Kanter**
REBECCA S. KANTER
Assistant United States Attorney
Attorneys for Plaintiff
United States of America

1
2
3                    UNITED STATES DISTRICT COURT
4                   SOUTHERN DISTRICT OF CALIFORNIA
5
6    UNITED STATES OF AMERICA,          )   Criminal Case No. 08cr0139-BEN
                                        )
                        Plaintiff,      )
7                                       )   CERTIFICATE OF SERVICE
                    v.                  )
8                                       )
     RAUL TORRES-GARCIA,                )
9       (a.k.a. ALBERTO JOSE DEL MURO-  )
                    GUERRERO),          )
10                                      )
                        Defendant.      )
11   _____

12   IT IS HEREBY CERTIFIED THAT:

13         I, REBECCA S. KANTER, am a citizen of the United States and am at least eighteen years
14   of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

15         I am not a party to the above-entitled action. I have caused service of **RESPONSE AND
     OPPOSITION** on the following parties by electronically filing the foregoing with the Clerk of the
16   District Court using its ECF System, which electronically notifies them.

17         Knut Johnson, Esq.

18         I hereby certify that I have caused to be mailed the foregoing, by the United States Postal
     Service, to the following non-ECF participants on this case:
19
         None
20
     the last known address, at which place there is delivery service of mail from the United States
21   Postal Service.

22         I declare under penalty of perjury that the foregoing is true and correct.

23         Executed on September 2, 2008.

24                                              /s/ ***Rebecca Kanter***___
                                                REBECCA S. KANTER
25
26
27
28